**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

RUBEN GIL, as Personal Representative
of the Estate of
GABRIEL ULYSSES GIL and
ISABEL MARIE GIL, deceased,

        **Plaintiffs,**

*And*

ELMER U. CURRENCE,
as Personal Representative of the Estate of
KIMBERLY DAWN GIL, deceased,

        **Plaintiff Intervenor,**

*vs.*                               **Civil Action Number 1:06CV122**

FORD MOTOR COMPANY;
ELKINS FORDLAND, INC.;
TRW VEHICLE SAFETY SYSTEMS, INC.; and
JOHN DOE COMPONENT PART
MANUFACTURERS 1-5,

        **Defendants.**

**ORDER GRANTING FORD MOTOR COMPANY'S**
**MOTION FOR <u>NON-SHARING</u> PROTECTIVE ORDER**[1]

On June 6, 2007, Defendant Ford Motor Company ("Ford") filed its Motion for Non-Sharing

Protective Order [Docket Entry 126]. On June 20, 2007, Plaintiff Intervenor Elmer Currence

("Currence") filed his "Response in Opposition to Ford's Motion for Protective Order" [Docket

Entry 140]. On June 27, 2007, Ford filed its "Reply to Plaintiff Intervenor Elmer Currence's

Response in Opposition to Ford's Motion for Protective Order" [Docket Entry 142]. On June 29,

2007, Defendant TRW Vehicle Safety Systems, Inc. ("TRW") filed its "Notice of Joinder in

---

[1]The Court notes that Ford also filed a Motion for Sharing Protective Order [Docket Entry
135]. That Motion has been addressed by separate Order.

Defendant Ford's Motion for Non-Sharing Protective Order and Memorandum in Support" [Docket Entry 145]. On July 6, 2007, Currence filed his "Objections to Ford's Reply to Plaintiff's Response in Opposition to Ford's Motion for Non-Sharing Protective Order" [Docket Entry 153]. On July 13, 2007, Ford filed its "Motion to Strike Plaintiff Intervenor Elmer Currence's Objections to Ford's Reply to Plaintiff's Response in Opposition to Ford's Motion for Non-Sharing Protective Order, or in the Alternative, Motion to File Surreply and Memorandum in Support Thereof" [Docket Entry 157]. On July 13, 2007, Currence filed his "Response in Opposition to Defendant TRW's Joinder in Ford's Motion for Non-Sharing Protective Order" [Docket Entry 158].[2]

Despite the volume of filings, this dispute concerns only two issues- whether the Court should enter a protective order covering what Ford represents are approximately 183 pages of documents, and, if so, should that protective order be a "non-sharing" protective order. Ford has already sought, and has been granted, a "sharing" protective order covering other documents to be produced in this matter.

## Protectability of the Documents at Issue

The Court must first address a threshold issue: Whether the documents at issue are actually entitled to any protection. The Court admits to having been at first encouraged by Currence's Introduction, which provides:

> Plaintiff intervenor does not oppose providing Ford with a protective order to protect what Ford *alleges* (without the required document-specific proof) are its "trade secrets" and/or proprietary information. Nor is this motion about any alleged refusal

---

[2]Also pending are Ford's "Motion to Strike Discovery Response and to Compel" [Docket Entry 111], Plaintiff's Response in Opposition thereto [Docket Entry 118], and Ford's Reply in Support [Docket Entry 120]; and "Ford's Motion to Strike Discovery Objections and to Compel Ford Documents Identified in Plaintiff Intervenor's Initial Disclosures" [Docket Entry 114], Plaintiff Currence's Response in Opposition thereto [Docket Entry 116], and Ford's Reply in support [Docket Entry 119], resolution of all which depends in large part on the resolution of the protective order issues.

by Plaintiff to enter into a protective order, as all plaintiffs have already agreed to enter into a suitable protective order.

The only issue in disagreement in this motion is whether the protective order sought by Ford is a sharing (meaning that other similarly-situated litigants in other Ford cases involving the same or similar vehicles and same or similar defects, properly identifying themselves and their cases, and then executing the proper written documents extending and agreeing to be bound by the same terms of the existing protective order and its penalties for noncompliance) or non-sharing.

(Response at page1-2.) Fourteen pages later, however, Currence argues as follows:

IV.  TO THE EXTENT FORD REFUSES ANY SHARING PROVISION, PLAINTIFF OBJECTS TO ENTRY OF ANY ORDER BECAUSE FORD HAS NOT MET ITS BURDEN UNDER FEDERAL RULE 26(c) TO JUSTIFY THE PROTECTIVE ORDER IT SEEKS.

(Response at page16). The Court finds Currence's introductory statement disingenuous, considering that: 1) Currence is responding to a motion for a non-sharing protective order that was filed after his counsel informed Ford's counsel that "we will not agree to a non-sharing provision;" 2) Ford's letter in response states: "Because you will not agree to a joint sharing/non-sharing protective order, we cannot produce any documents that are subject to any type of protective order at this time. We will be filing a motion for a non-sharing protective order soon; and 3) the fact that Currence also refused to stipulate to a _sharing_ protective agreement solely because it required the party filing a protected document to file it under seal. Currence clearly _does_ object to Ford's attempt to protect the documents by any protective order, and expressly requests the Court deny any protective order, unless Ford agrees to the sharing provision.

The Court therefore finds it must first take up the issue of the protectability of Ford's documents. F.R.Civ.P. 26(c) provides:

Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is

pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had;
(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;
(5) that discovery be conducted with no one present except persons designated by the court;
(6) that a deposition, after being sealed, be opened only by order of the court;
(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and
(8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

Significantly, Ford is not seeking to protect the information at issue from disclosure to the litigants, including Currence, but only from further dissemination outside this litigation. In this diversity case, the Court looks to The West Virginia Trade Secrets Act, which defines a trade secret as "information" that (1) derives "independent economic value" from "not being generally known" or "readily ascertainable" by others who can obtain economic value from its use or disclosure; and (2) is the subject of "efforts that are reasonable under the circumstances to maintain" the secrecy of the information. W. Va. Code §§ 47-22-1(d)(1), (2).

Ford attached to its Memorandum as Exhibit L the "Affidavit of Michael Leigh in Support of Proprietary & Trade-Secret Nature of Certain Documents." In his Affidavit, Mr. Leigh represents that he is employed by Ford as a research engineer in Ford's Automotive Safety Office. Mr. Leigh describes the documents Ford is seeking to protect in its motion as "documentation regarding potential future designs for passenger vehicle roof structure, including design concepts, cycle plans, timetable, and confidential manufacturing technology." He further describes these documents as

"trade secrets of Ford Motor Company . . . . used in Ford's business of designing and manufacturing passenger vehicles and provides Ford with an opportunity to gain an advantage in that market over anyone who does not have such information." Finally, Mr. Leigh also declares under oath that the United States Department of Transportation National Highway Traffic Safety Administration ("NHTSA") "specifically agreed to accord these proprietary documents confidential treatment," attaching Ford's request to the NHTSA for such confidentiality, and the NHTSA's response which provides:

> I have decided to grant your request.
>
> Ford provided this information voluntarily and was not required to submit this information under 49 U.S.C. § 30166 or other authority. Accordingly, I have reviewed your request under the principles set forth in *Critical Mass Energy Project v. Nuclear Regulatory Comm'n.*, 975 F.2d 871 (D.C. Cir. 1992).
>
> Under the test set forth in *Critical Mass*, financial or commercial information provided to the government on a voluntary basis is "confidential" for purposes of Exemption 4 of the Freedom of Information Act if it is the kind of information that would customarily not be released to the public by the submitter. Your certificate indicates that the data contained in your response is data that Ford has never released or become available outside Ford, except as described in the certification. I am according confidential treatment to the information contained in your submission.

(Exhibit A-2). Mr. Leigh has sworn in an affidavit that the information derives "independent economic value" from "not being generally known" or "readily ascertainable" by others who can obtain economic value from its use or disclosure. He further swears in his affidavit and the NHTSA decided that the information was "the kind of information that would customarily not be released to the public;" that "Ford has never released [it] to the public;" and "[it has never] become available outside Ford."

The Court uses the six-factor test found in §757 of the Restatement of Torts to determine whether there is good cause to issue a protective order to prevent the disclosure of documents:

1) [T]he extent to which the information is known outside of the defendant's business;

2) [T]he extent to which it is known by employees and others involved in the defendant's business;

3) [T]he extent of the measures taken by the defendant to guard the secrecy of the information;

4) [T]he value of the information to the defendant and competitors;

5) [T]he amount of effort or money expended by the defendant in developing the information; and

6) [T]he ease or difficulty with which the information could be properly acquired or duplicated by others.

State ex rel. Johnson v. Tapis, 187 W. Va. 337, 419 S.E.2d 1 (W. Va. 1992). Upon review of these factors, Mr. Leigh's affidavit, and the exhibits attached, the Court finds that the information Ford seeks to protect is entitled to protection as "trade secret[s] or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." F.R.Civ.P. 26(c).

The Fourth Circuit holds:

An order under Rule 26(c) is committed to the discretion of the trial court and will not be disturbed on appeal unless the court has abused its discretion. *Keyes v. Lenoir Rhyne College*, 552 F.2d 579, 581 (4th Cir. 1977). Abuse may be demonstrated by a clear showing that denial of discovery has caused substantial prejudice. *Otis Clapp & Son, Inc., v. Filmore Vitamin Co.*, 754 F.2d 738, 744 (7th Cir. 1985).

M&M Medical Supplies and Services, Inc. v. Pleasant Valley Hosp., Inc. 981 F.2d 160 (4th Cir. 1992).

Again, Ford is not, with this motion, seeking to protect any of the documents from disclosure to Currence. Instead, Ford is willing to produce the documents as long as they are protected from further dissemination outside this litigation. The Court therefore finds no prejudice to Currence or

any other plaintiff, even if the protective order is entered. Currence will receive the documents either way.

## Non-Sharing Versus Sharing Protective Order

Upon review of Ford's motion, Leigh's sworn affidavit, and the exhibits in support, the Court finds that Ford has met its burden of establishing good cause for the entry of a protective order.

In his objection to a non-sharing protective order, Currence states as follows:

> Without any citation of authority whatsoever, Ford refuses to enter into any sharing protective order, and instead insists upon a non-sharing protective order, which is against the majority rule of law in this nation and contrary to public policy. Ford flatly ignores the controlling authority (including the cases plaintiffs have brought to Ford's attention in prior meet-and-confer exchanges). Well-established public policy throughout this country authorizes the sharing of information with other litigants when the same restrictions are imposed on the sharing party that will continue to protect the party claimant that certain documents are protected. See *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003), *Phillips v. Gen. Motors*, 307 F.3d 1206, 1212 (9th Cir. 2002.) "Where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 475 (9th cir. 1992); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265-66 (9th Cir. 1964). *Foltz* at 1131-1132.

(Currence's brief at 2-3)(emphasis added). Conspicuous in its absence from Currence's argument is any citation to Fourth Circuit cases. Instead in support of his argument that Ford ignores "controlling authority" and "majority rule of law," he cites only to the Ninth Circuit. Additionally, the Court finds even those cases distinguishable from the case at bar. In Foltz and Phillips, intervenors presented themselves after settlement of the underlying action in order to gain access to sensitive information via modifications to existing non-sharing protective orders. Inherent in these decisions then is the fact that non-sharing protective orders had been entered in the underlying cases.

These decisions all also involve collateral litigant's request for modification of an existing

non-sharing order so those collateral litigants could receive the information. Here, Currence is a

litigant in the case at bar. He will not be precluded in any way from receiving discovery due to the

non-sharing protective order. Instead, he is arguing that a protective order entered now in this case

be framed so as to enable other litigants, not involved in this case, to obtain the information without

taking further action. Currence cites no authority that supports such a requirement, and the Court

has found none. Even if it were true, as Currence asserts, that "public policy throughout this country

<u>authorizes</u> the sharing or information," the Court finds no law that <u>mandates</u> it under the

circumstances of this case.

A significant difference in <u>Foltz</u> is also that the Ninth Circuit found the District Court had

"issued a blanket protective order, forbidding both parties to disclose <u>any</u> information produced in

discovery absent permission . . . ." <u>Foltz</u> at 1131 (emphasis added). Here the Court is not being

asked to issue a blanket protective order. The proposed non-sharing protective order will, according

to Ford, cover 183 pages of documents that Ford asserts are trade secrets. Importantly, in <u>Foltz</u>, the

court stated:

> In addition to access to material that should not have been placed under seal in the
> first instance, collateral litigants <u>may</u> be entitled to modification of the original
> protective order permitting them access to the previously discovered material . . . .
>
> <u>Nonetheless, a court should not grant a collateral litigant's request for such</u>
> <u>modification automatically. As an initial matter, the collateral litigant must</u>
> <u>demonstrate the relevance of the protected discovery to the collateral proceedings and</u>
> <u>its general discoverability therein</u>. Requiring a showing of relevance prevents
> collateral litigants from gaining access to discovery material merely to subvert
> limitations on discovery in another proceeding. <u>See</u> *Wilk*, 635 F.2d at 1300. Such
> relevance hinges "on the degree of overlap in facts, parties, and issues between the
> suit covered by the protective order and the collateral proceedings . . . ."
>
> We take this opportunity to clarify the mechanics of this relevance inquiry. The case
> law suggests that <u>the court that entered the protective order should satisfy itself that</u>

> the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order. *See Wilk*, 635 F.2d at 1300 . . . .

Id. at 1132 (emphasis added). Clearly, Currence's own cases do not support his argument. Currence is arguing for sharing with litigants who are not collateral to this case, are unrelated to this case, and are not even identified at this point in time. It is obvious that no court could make the relevance inquiry required by Foltz under these circumstances.

Currence's other arguments against a non-sharing order are similarly unpersuasive. First, he argues that trade secrets are adequately protected by other litigants under such sharing provisions. Although this may be true in an ideal world, this Court hesitates to adopt this argument. Currence cites Wilk v. American Medical Association, 635 F.2d 1295 (2d Cir. 1981), for the proposition: "the collateral litigant, as a bona fide litigant, had a right to use those materials already discovered by plaintiff in the action that were both relevant to the collateral litigant's suit and not otherwise privileged, under the same restrictions as the plaintiff in the action." Again, Wilk involved a collateral, known litigant. The court was therefore in a position to decide whether the materials were relevant to the collateral litigant's action. The Court here does not have that advantage in that the litigants for whom Currence seeks the benefit of the discovery are not "collateral litigants," are no in any way linked to this case, and are, in fact, unknown.

Currence's arguments that "shared discovery will force Ford to be truthful" and "shared discovery makes the system more efficient and promotes judicial economy" are similarly unpersuasive, particularly in the instant case, where the Court is being asked to protect only 183 pages of documents that are, nevertheless, going to be produced to the parties. Collateral litigants and even future collateral litigants may move for modification to the protective order, as did the litigants in the cases cited by Currence. That being the case, any litigant would be extremely foolish

(not to mention unethical) to be "untruthful" regarding discovery it had already produced in another case. Further, there is no indication that Ford has not been truthful in this case.

Upon consideration of all which, the Court finds Ford's "Motion for Non-Sharing Protective Order" [Docket Entry 126] should be, and hereby is **GRANTED**. Plaintiff has objected only to Paragraph 6 of Ford's proposed Protective Order. This Order overrules that objection. Considering this, and upon review of the proposed protective order, the Court finds Ford's "Stipulated Protective Order" filed as Exhibit I to its Motion on June 6, 2007, appropriate for entry. The Court shall therefore enter the protective order as filed, with the exception of replacing the first page (to remove the word "Stipulated" and the Exhibit label) and the attorney signature pages.

**Plaintiff, Elmer Currence's Objections to Ford's Reply [Docket Entry 153]**

Currence strenuously objects to Ford's Reply brief because Ford cited <u>Bryte v. American Household, Inc</u>. 142 Fed. Appx. 699 (4th Cir. 2005), because the case is unpublished and because Ford "misrepresented the law and holding of that unpublished opinion, which could mislead this court, and result in the court making an erroneous ruling." While the Court agrees that <u>Bryte</u> is an unpublished case, and therefore citation is disfavored, this Court specifically directed counsel to review that case during a hearing held in this case. Further, the likelihood that citation to this case could mislead this court and result in the court making an erroneous ruling is unlikely, because the decision was on appeal from the undersigned's order. Finally, the Fourth Circuit in <u>Bryte</u> held:

> In this case, Sunbeam had a legitimate interest in filing motions with the court seeking protection from unfettered dissemination of its proprietary, confidential, trade secret and private documents. It also had a legitimate interest in limiting discovery to this case, thus opposing the Brytes' efforts to expand the benefits of discovery to other cases where the Brytes' counsel were representing plaintiffs in product litigation.

The Court finds the above holding is relevant to the issue at bar. It is therefore **ORDERED** that:

"Plaintiff, Elmer Currence's Objections to Ford's Reply to Plaintiff's Response in Opposition to Ford's Motion for Non-Sharing Protective Order" [Docket Entry 153] are **OVERRULED**.

It is further **ORDERED** that:

"Ford Motor Company's Motion to Strike Plaintiff Intervenor Elmer Currence's Objections to Ford's Reply to Plaintiff's Response in Opposition to Ford's Motion for Non-Sharing Protective Order, or in the Alternative, Motion to File Surreply" [Docket Entry 157] is **DENIED AS MOOT**.

"Defendant TRW's Notice of Joinder in Defendant Ford's Motion for Non-Sharing Protective Order" [Docket Entry 145] is **DENIED AS MOOT**.

"Plaintiff Elmer Currence's Response in Opposition to Defendant TRW's Joinder in Ford's Motion for Non-Sharing Protective Order" [Docket Entry 158] is **OVERRULED AS MOOT**.

The United States Court Clerk for the Northern District of West Virginia shall provide a copy of this Order to counsel of record.

**DATED**: September 4 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

1.